**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LINDA DiFILLIPPO,**

                               **Plaintiff,**

    **vs.**                                   **6:13-cv-00215**
                                          **(MAD/ATB)**

**SPECIAL METALS CORPORATION, WILLIAM**
**FARLEY, DONALD BIERSTINE, RONALD**
**THOMPSON, NICHOLAS MASCHINO, KEITH**
**DABBS, and TERRY WHITE,**

                              **Defendants.**

_____

**APPEARANCES:**                        **OF COUNSEL:**

**BOSMAN LAW FIRM, L.L.C.**        **A.J. BOSMAN, ESQ.**
6599 Martin Street                 **DANIEL W. FLYNN, ESQ.**
Rome, New York 13440
Attorneys for Plaintiff

**BOND, SCHOENECK & KING, PLLC**    **BRIAN J. BUTLER, ESQ.**
One Lincoln Center               **COLIN M. LEONARD, ESQ.**
Syracuse, New York 13202-1355    **SUZANNE M. MESSER, ESQ.**
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On October 12, 2012, Plaintiff, Linda DiFillippo, commenced this action against

Defendants Special Metals Corporation ("Special Metals"), William Farley, Donald Bierstine,

Ronald Thompson, Nicholas Maschino, Keith Dabbs, and Terry White. Dkt. No. 5 at 11.

Plaintiff's amended complaint alleges (1) gender discrimination in violation of Title VII of the

Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and

Article I, Section 11 of the New York State Constitution; (2) retaliation in violation of Title VII,

the NYSHRL, Title V of the Americans with Disabilities Act ("ADA"), and the Rehabilitation

Act ("RA"); and (3) disability discrimination in violation of Title I of the ADA, the RA, the

NYSHRL, and the Article I, Section 11 of the New York State Constitution. Dkt. No. 27 at 9-12.

Plaintiff seeks $1,000,000 in compensatory and punitive damages for the injury and harm caused

by Defendants, as well as costs, injunctive and declaratory relief. *See id.* at 1, 14.

Currently pending before the Court is Defendants' motion for summary judgment. *See*

Dkt. No. 62-7 at 1. Plaintiff opposes Defendants' motion. Dkt. No. 77. For the following

reasons, Defendants' motion is granted.

## II. BACKGROUND

On August 8, 2005, Plaintiff began her employment with Defendant Special Metals in the

Plant Utility Department. Dkt. No. 76 at ¶¶ 3, 5. Plaintiff has Chronic Obstructive Pulmonary

Disease ("COPD"), asthma, emphysema, and chronic bronchitis, which led to her being placed on

a permanent medical restriction at the beginning of her employment with Special Metals. Dkt.

No. 77 at 12. On or about February 28, 2006, Plaintiff suffered a hand injury which led to

another medical restriction beginning in May 2006. *Id*.

Plaintiff bid for a position in the Inspection Department multiple times between 2005 and

2010, but she was never selected for the position. Dkt. No. 76 at ¶ 6. Plaintiff alleges that after

her bid was denied in February 2010, the company's Safety Director, Joe Mack, told her that she

was ineligible for the position because she had a permanent medical restriction. *Id*. The

collective bargaining agreement ("CBA") in place in February of 2010 stated that employees with

medical restrictions were not eligible for a bid. *Id*. at ¶ 7.

Plaintiff filed a charge with the EEOC after she was denied a bid in the Inspection

Department in April 2010. Dkt. No. 77 at 13. On June 3, 2010, Special Metals offered Plaintiff

the position in the Inspection Department and she began her training on June 14, 2010. Dkt. No. 76 at ¶ 10.

Inspectors at Special Metals inspect raw material, in-process material, and finished products to ensure that the materials meet the customer's specifications. *Id*. at ¶ 13. The position requires great attention to detail because errors that are not identified by Inspectors can lead to serious injury or death. *Id.* In order to be an Inspector at Special Metals, a person must complete forty hours of classroom work in addition to on-the-job training. *Id*. at ¶¶ 24, 26. Plaintiff asserts that all four of the male trainees were allowed to simultaneously undergo classroom training as well as hands-on training within the first two weeks, but that she was left in the classroom for eight hours and did not begin hands-on training until the last week and a half of her training. *Id*. at ¶¶ 19, 26. While all Inspection trainees were moved to different areas of inspection on a regular basis, Plaintiff was assigned to fifteen different areas within the department, more areas than any other trainee in 2010. *Id*. at ¶ 29. Plaintiff asserts that she was never given enough training or time to learn any given task. *Id*. at ¶ 39.

Plaintiff alleges that Joseph Sefcheck, the Inspector that she shadowed, had a gender bias. *Id*. at ¶¶ 37, 39. According to Plaintiff, Mr. Sefcheck participated in conversations tinged with sexual innuendo about her and he criticized her perfume, make-up, and clothes on a daily basis. *Id*. Plaintiff also alleges that Mr. Sefcheck engaged in crude comments about another female employee after he caused disciplinary action to be issued against her. *Id*. Plaintiff claims that Mr. Sefcheck refused to assist Plaintiff and that he mocked her efforts to acquire the information needed to complete tasks. *Id*. at ¶ 40.

Defendants claim that Plaintiff made at least thirty-three mistakes while in the Inspection Department. Dkt. No. 62-6 at ¶ 44. Plaintiff asserts that four of her purported errors occurred on

days when she was not working. Dkt. No. 76 at ¶ 44. Additionally, four of the purported errors occurred on February 1, 2011 when she was only clocked in for twenty minutes. *Id*. On or about February 24, 2011, the Company informed Plaintiff that she would be demoted from the Inspection Department and returned to her previous position in the Plant Utility Department. *Id*. at ¶ 46. Plaintiff alleges that while she was in the Inspection Department, Adam Smith had a higher number of recorded errors than her, but he was not demoted. *Id*. at ¶ 47. Plaintiff also alleges that Joe Lebert had a higher error percentage than her, but he was not demoted. *Id*.

The Union filed a grievance regarding Plaintiff's demotion. *Id*. The Company met with Plaintiff regarding the grievance on May 17, 2011. *Id*. at ¶ 52. Defendants assert that during this meeting, Plaintiff revealed that she had a number of Company records at home in violation of Plant Rule #19. *Id*. at ¶¶ 52-53. Plaintiff claims that the only company documents that she had at home were her notes and other materials that Defendant White gave her permission to take home. *Id*. Defendants allege that Plaintiff acknowledged that she had received and reviewed the Plant Rules at the time that she commenced her employment, but Plaintiff asserts that she "does not know whether she kept a copy of the Plant Rules book after she signed it" and that Defendant Farley denied her request for a copy of the Plant Rules book to review. *Id*. at ¶ 56. The Plant Rules indicate that employees who fail to adhere to the Company's standards of conduct or violate any of the Plant Rules may be subjected to appropriate disciplinary action, which could include discharge. *Id*. at ¶ 55. Defendants assert that the Company terminated Plaintiff after they determined that she violated Plant Rule #19. Dkt. No. 62-6 at ¶ 65. Plaintiff claims that she was terminated on the basis of her gender, disability, and in retaliation for a protected activity and that Defendants are using Plant Rule #19 as pretext. Dkt. No. 76 at ¶ 65.

The Union filed a grievance regarding Plaintiff's termination and informed Special Metals

of its intention to take the grievance to arbitration. Dkt. No. 62-6 at ¶¶ 67-68. On or around September 16, 2011, Special Metals offered Plaintiff a Last Chance Agreement, which would have reinstated Plaintiff's employment if she agreed to adhere to the Plant Rules and serve a probationary period during which she could be terminated without recourse through a grievance procedure if she was found to violate Company rules. *Id*. at ¶ 69. Plaintiff did not sign the Last Chance Agreement. *Id*. at ¶ 70. Plaintiff alleges that she was only offered a Last Chance Agreement after she requested one. Dkt. No. 76 at ¶ 69. Plaintiff also asserts that the Last Chance Agreement contained language where she had to admit to violating Plant Rule #19. *Id*. She asked that this language be removed, but Special Metals refused. *Id*.

In March of 2012, the Company participated in a three-day arbitration session during which Plaintiff and seven other Special Metals employees testified under oath regarding the events leading up to the Company's decision to demote Plaintiff from the Inspection Department to the Plant Utility Department, and also the Company's decision to terminate Plaintiff's employment at Special Metals. *Id*. at ¶ 71. The arbitration was binding pursuant to section 8.10 of the CBA. Dkt. No. 62-1 at 29. On the issue of demotion, the Union's position was that Plaintiff did not receive appropriate training or warnings of poor performance. *Id*. at 173. Additionally, the Union asserted that neither the number nor the percentage of errors made by Plaintiff were greater than those made by other inspectors. *Id*. at 174. The arbitrator ultimately found that the issue of Plaintiff's demotion was not arbitrable, but if it were arbitrable, he would uphold the demotion. Dkt. No. 76 at ¶ 77. In his opinion, the arbitrator stated that, "[g]iven the number of errors and the importance of accuracy to the survival of the Company, it cannot reasonably be argued that the Grievant was improperly demoted." *Id*.

On the issue of termination, the Union's position was that Plaintiff was not adequately

warned of the consequences of bringing documents home and that the penalty of termination was not reasonably related to the seriousness of the alleged offense and Plaintiff's past work record. *See* Dkt. No. 62-1 at 177. The arbitrator held that Special Metals had just cause for terminating Plaintiff. Dkt. No. 76 at ¶ 78. The arbitrator evaluated Plaintiff's knowledge of the rule and the circumstances under which the rule was violated. Dkt. No. 62-1 at 178. Specifically, the arbitrator noted that, in its investigation of the incident, Plaintiff admitted to the Company that, "'[i]f she knew she was violating a plant rule for taking records off site, she would have never admitted to taking them.'" *Id.* at 176. During the investigation and before the arbitrator, Plaintiff maintained that she had permission to remove the documents. *See id.* The arbitrator noted that Plaintiff's belief that she had permission to take documents home with her may have been believable at one point. *See id.* at 179. In May of 2011, however, which was after Plaintiff's demotion, she asked another employee to bring the documents to her home. *See id.* As such, the arbitrator found that the evidence demonstrated that Plaintiff knew that it was improper to take such documents home with her and continued to do so after she no longer had any legitimate use for the documents. *See id.*

On October 12, 2012, Plaintiff commenced this action in Oneida County Supreme Court. *See* Dkt. No. 1. On February 26, 2013, Defendants removed the case to this Court. *See id.* Currently before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 62.

### III. DISCUSSION

**A.     Standard of review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43

F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## B.     Federal and State Gender Discrimination

Defendants argue that Plaintiff was terminated for a legitimate, non-discriminatory reason — her violation of Plant Rule #19 — and that Plaintiff cannot establish a prima facie case of discrimination nor demonstrate that the reasons stated for termination are a pretext for discrimination. Dkt. No. 62-7 at 13-14. In response, Plaintiff asserts that her disparate treatment as compared to the other four male trainees constitutes evidence of discriminatory intent that could lead a reasonable jury to conclude that she was terminated for discriminatory reasons. Dkt. No. 77 at 8.

"To establish a prima facie case of gender discrimination under Title VII and the NYSHRL, a plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) circumstances surrounding the employment action that give rise to an inference of discrimination." *Fahrenkrug v. Verizon Servs. Corp.*, ___ Fed. Appx. ___, 2016 WL 3448300, *2 (2d Cir. 2016) (citing *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106-07 (2d Cir. 1989)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 316 (2004) (holding that the *McDonnell Douglas* framework applies to discriminatory discharge claims brought pursuant to the NYSHRL) (citations omitted).

Discrimination claims are evaluated pursuant to the burden-shifting analysis articulated in *McDonnell Douglas*, 411 U.S. at 802-03.

> Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802, 93 S. Ct. 1817. If the plaintiff does so, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for its action. *Id.* Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination.

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)). To rebut the articulated justification for the adverse action, "the plaintiff must show both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 n.4 (1993) (internal quotations omitted). However, conclusory allegations of discrimination are insufficient to defeat a motion for summary judgment. *See Diggs v. Niagara Mohawk Power Corp.*, No. 1:14-cv-244 (GLS/CFH), 2016 U.S. Dist. LEXIS 50035, *9 (N.D.N.Y. Apr. 14, 2016) (citing *Holcomb*, 521

F.3d at 137); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

With respect to Plaintiff's prima facie case, it is undisputed that, as a woman, Plaintiff is a member of a protected class under Title VII. *See* 42 U.S.C. § 2000e-2(a). It is also undisputed that because Plaintiff was demoted and terminated, she was subjected to an adverse employment action. *See Fahrenkrug*, 2016 WL 3448300, at *4. Therefore, in order to establish a prima facie case of gender discrimination, Plaintiff must show that she was qualified for the position that she held and that the circumstances surrounding her termination give rise to an inference of discrimination. A plaintiff may create an inference of discrimination by showing disparate treatment, *i.e.*, by showing that his employer "treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). To create an inference of discrimination by showing disparate treatment, plaintiff must show that he was "'similarly situated in all material respects'" to the individuals with whom he seeks to compare himself. *Id.* (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).

In Plaintiff's memorandum of law in opposition to Defendants' motion for summary judgment, she asserts that the record establishes disparate treatment because she could not share in overtime as soon as other trainees, she was shuffled around to different training areas from day to day unlike other trainees, she was not allowed to be removed from Mr. Sefcheck's supervision in mark-to-cut when other trainees were, and she was not allowed to ask Mr. Sefcheck questions. Dkt. No. 77 at 8. Despite this evidence, Defendants argue that Plaintiff cannot establish a prima facie case of discrimination because she has not shown that the arbitrator's decision regarding her termination was wrong as a matter of fact, or that the impartiality of the arbitration proceeding was somehow compromised. Dkt. No. 62-7 at 20. Defendants rely on the Second Circuit

decision *Collins v. N.Y. City Transit Auth.* to make this argument. *Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002).

In *Collins,* the appellant, an African-American male, was terminated from his employment, and he filed a grievance against his employer claiming he was discriminatorily discharged. *Collins*, 305 F.3d at 117. Following the filing of the grievance, the appellant was represented by his union at an arbitration hearing. *Id*. The arbitrator upheld the termination after a finding of just cause. *Id*. In April 1993, the appellant commenced an action against the Transit Authority for discriminatory and retaliatory employment termination in violation of Title VII as well as other claims. *Id*. at 118. On October 30, 2000, the district court granted summary judgment in favor of the employer dismissing the remaining claims and the appellant appealed. *Id*. The Second Circuit affirmed the district court's decision to grant the employer's motion for summary judgment and stated that while the appellant proffered enough evidence to create an issue of fact of whether his termination resulted from discriminatory or retaliatory purposes, "that proffer was not sufficient to overcome the additional probative weight of the arbitration award allowing his termination." *Id*. at 119.[1] The court concluded that a negative arbitration decision does not preclude a Title VII action by a discharged employee. *Id*. (other citations omitted). However, if an independent arbitrator's decision "follows an evidentiary hearing and is based on substantial evidence," a Title VII plaintiff "must present strong evidence that the decision was

---

[1] The Second Circuit recognized that the "*Collins* defense" may be viewed as either "an attack on a [plaintiff's] showing of an inference of discrimination or retaliation in the prima facie case or as an attack on plaintiff's satisfaction of the subsequent requirement that a proffered legitimate reason for an employment action be shown to be pretextual." *Collins*, 305 F.3d at 118 n.1. The Court chose to treat the defense as an attack on the prima facie case, but noted that "[b]ecause issues of this nature tend to collapse as a practical matter" under the *McDonnell Douglas* burden shifting framework, it did not intend to preclude the use of the defense as an attack on a claim of pretext. *Id.*

wrong as a matter of fact" or that the "impartiality of the proceeding was somehow compromised" in order to survive a motion for summary judgment. *See Collins*, 305 F.3d at 119; *see also Attard v. City of N.Y.*, 451 Fed. Appx. 21, 24 (2d Cir. 2011).

*Collins* has consistently been followed and applied by the district courts in the Second Circuit. In *Diggs*, the plaintiff was an African-American male employed by Niagara Mohawk who was discharged after he used company tools at his home for personal gain in violation of the company's standards of conduct. *See Diggs*, 2016 U.S. Dist. LEXIS 50035, at *1-*5. The plaintiff challenged the termination through an arbitration hearing. *Id*. The arbitrator upheld the termination after finding there was just cause for termination because the plaintiff violated company policy. *Id*. at *6. The plaintiff challenged the arbitrator's decision in the Northern District of New York alleging racial discrimination on the grounds that three white employees were given far less discipline for similar conduct. *Id*. at *7. The defendant moved for summary judgment relying on *Collins*. *Id*. at *11. The court applied the standard set forth in *Collins* and granted the defendant's motion for summary judgment because the plaintiff did not show that the arbitrator's decision was wrong as a matter of fact, or that the impartiality of the arbitration proceeding was somehow compromised. *Id*. at *12.

In her memorandum of law, Plaintiff correctly argues that a negative arbitration decision does not preclude a subsequent Title VII action. *See* Dkt. No. 77 at 4-6. Plaintiff's argument, however, is misplaced. Defendants have not argued that the arbitrator's decision bars Plaintiff from commencing this lawsuit or that they should be granted summary judgment on *res judicata* or collateral estoppel grounds. The cases upon which Plaintiff has relied are inapposite. *See, e.g.*, *Morel v. American Building Maintenance Co.*, 124 Fed. Appx. 671 (2d Cir. 2005) (reversing the trial court's grant of summary judgment on the grounds of *res judicata* and collateral estoppel

where the plaintiff's wrongful termination claim had been rejected by an arbitrator). Rather, as

Defendants correctly argue, the arbitrator's decision is simply strong evidence in support of their

position. *See Collins*, 305 F.3d at 115-19.

Moreover, the law is well settled that Plaintiff's failure to raise a discrimination claim

before an arbitrator is "immaterial" to whether the arbitral decision should be given substantial

weight. *See Spell v. United Parcel Service*, No. 09 Civ. 4375, 2012 WL 4447385, *2 (E.D.N.Y.

Sept. 25, 2012) (citing cases). "As long as the arbitrator has properly evaluated the factual,

nondiscriminatory reasons for the termination, 'the fact that the arbitration did not adjudicate

[plaintiff's] discrimination claim is irrelevant. . . .'" *Id.* (quoting *Weeks v. N.Y.S. Div. of Parole*, 78

Fed. Appx. 764, 766 (2d Cir. 2003)) (other citation omitted). As discussed, the arbitrator

considered substantial evidence in support of Defendants' decision to demote and terminate

Plaintiff and Plaintiff has failed to present any evidence or arguments suggesting that the

arbitrator was biased.[2]

Although Plaintiff's discrimination and retaliation claims are not precluded by the

arbitrator's decision, Defendants are nevertheless entitled to summary judgment. Plaintiff has

---

[2] In her memorandum of law, Plaintiff asserts that the arbitrator's decision to uphold the termination for just cause cannot preclude her from receiving relief because the motivation for her termination was unlawful. *See* Dkt. No. 77 at 3. This argument fails because "courts in this Circuit have held that whether discrimination claims were made before the arbitrator is irrelevant, because '[t]here is no suggestion in *Collins* that the plaintiff had presented his evidence of discriminatory . . . intent to the arbitrator.'" *Diggs*, 2016 U.S. Dist. LEXIS 50035, at *13 (quoting *Brenner v. City of N.Y. Dep't of Educ.*, No. 14 Civ. 3559, 2015 U.S. Dist. LEXIS 124509, 2015 WL 5475628, *6 (E.D.N.Y. Sept. 17, 2015)) (other quotation and citation omitted); *see also Gallimore-Wright v. Long Island R. Co.*, 354 F. Supp. 2d 478, 491-92 (S.D.N.Y. 2005); *Simpson v. N.Y. State Dep't of Civ. Serv.*, No. 02-CV-1216 (NPM/DRH), 2005 U.S. Dist. LEXIS 3399, *16 (N.D.N.Y. Mar. 1, 2005) ("Under *Collins* and its progeny, failure to address the discrimination issue in an arbitration does not diminish the impact of that arbitration on a subsequent discrimination action") (citations omitted).

failed to put forth new evidence that was not before the arbitrator or argued that the arbitrator's impartiality was compromised. Even assuming that Plaintiff satisfied her prima facie case of discrimination, Defendants presented substantial evidence demonstrating Plaintiff's poor work performance and violation of Plant Rule #19 which Plaintiff has failed to establish was a pretext for discrimination.

Plaintiff's attempts to attack the evidence presented are simply unavailing. For example, Plaintiff argues that four of the purported errors that occurred between January 18 and 22, 2011 were incorrectly attributed to her because she did not work on those days. *See* Dkt. No. 77 at 22. Plaintiff's own evidence, however, clearly establishes that she was, in fact, working on the above dates. *See* Dkt. No. 72-1 at 37. For example, the time sheets provided show that Plaintiff worked from January 17, 2011 at 11:14 p.m., through January 18, 2011 at 7:34 a.m. *See id.* While it does appear that Plaintiff did not work the night shift between January 18 and January 19, she did work the night shifts on January 20 (which ended on January 21) and January 21 (which ended on January 22). *See id.* Similarly, Plaintiff argues that "[t]he list of errors also shows that Plaintiff committed four errors on February 1, 2011 when she was only clocked in for twenty minutes." Dkt. No. 77 at 22. A review of the time sheets, however, demonstrates that Plaintiff commenced work on January 31, 2011 at 11:05 p.m., and her shift ended February 1, 2011 at 11:30 a.m. *See* Dkt. No. 72-1 at 37.

Moreover, Plaintiff fails to demonstrate that she was similarly situated to other male employees or that she was treated differently from other such individuals. As Defendants point out, Plaintiff was not the only Special Metals employee to be demoted out of the Inspection Department for performance related issues. *See* Dkt. No. 62-7 at 13 n.6. In February of 2010, Mark Calenzo and Peter Decarlis were demoted for performance related issues. *See* Dkt. No. 62-

1 at ¶ 17.  Further, as to her termination, Plaintiff admits that other employees were terminated for violating Plant Rule #19.  *See* Dkt. No. 62-5 at 45.

Further, Plaintiff admits that, despite not being aware of any other employees who were offered last chance agreements after violating Plant Rule #19, she was offered such an agreement, whereupon she would have been reinstated.  *See* Dkt. No. 62-5 at 46-48.  Plaintiff, however, refused to sign the agreement when the Company refused to remove language in which Plaintiff would have admitted to violating Plant Rule #19.  *See id.*  Moreover, Plaintiff admits that male employees were terminated for violating Plant Rule #19.  *See id.* at 73-74.

Plaintiff repeatedly claims during her deposition that she was discriminated against when Defendants repeatedly provided her with inadequate training.  *See* Dkt. No. 62-5 at 55-65. Thereafter, however, she admits that Chris Debrango and Jim Krupa also received inadequate training and that this poor training is why they ultimately requested to be removed from the positions to which they were assigned.  *See id.* at 62-63.  The fact that these men allegedly received the same poor training as Plaintiff clearly undermines her claimed gender discrimination.

Further, Plaintiff attempts to argue that Special Metals has inconsistently applied its "disciplinary policy."  Dkt. No. 77 at 22-23.  Plaintiff discusses two male employees, Keith Ward and Adam Smith, who violated Plant Rule #19 but were not terminated in support of her argument that her own termination was pretextual.  *See id.*  Neither of these individuals, however, were accused of the unauthorized removal of Company property or records.  The allegations against Mr. Ward involved "poor work performance" and an inability "to clean up following your assigned tasks."  Dkt. No. 81 at 7.  Mr. Smith was accused of "horseplay on company property" in violation of Plant Rule #19.  *See id.* at 9.  As such, contrary to Plaintiff's contentions, these employees were not similarly situated to Plaintiff.

14

Moreover, the Court notes that, throughout her response, Plaintiff has relied upon the declarations of Debra Bader and Michael Geddes, which were both executed on January 19, 2016. *See* Dkt. Nos. 74 & 75. First, the Court notes that these declarations appear to be identical to the declarations Ms. Bader and Mr. Geddes submitted in the case *Bader v. Special Metals Corp.*, No. 6:11-cv-882 (N.D.N.Y.), which was dismissed by stipulation of the parties with the approval of the court on June 10, 2014. The Bader and Geddes declarations contain facts related to a different lawsuit, brought by an entirely different plaintiff, asserting different claims, relating to a different time period. Specifically, Ms. Bader's declaration discusses events that allegedly occurred between the start of her employment with Special Metals in 1978 to the last day of her employment in April of 2010. *See* Dkt. No. 74. Plaintiff's claims in this case primarily concern events that occurred between June 14, 2010, when she started working in the Inspection Department as an Inspector Trainee, and June 17, 2011, when she was terminated from her employment. The only mention of Plaintiff in Ms. Bader's declaration states that Ms. Bader was identified as having information relevant to Plaintiff's case on **January 8, 2010** and she was subpoenaed to give deposition testimony in **August of 2010**. *See* Dkt. No. 74 at ¶¶ 34-35. Interestingly, this action was not filed until October of 2012. As such, Ms. Bader herself admits that she had information relevant to Plaintiff's previous lawsuit against Special Metals, not the present matter. Similarly, Mr. Geddes' declaration discusses alleged events relating to Ms. Bader from 2007 to April of 2010. *See* Dkt. No. 75. It is unclear what relevance these documents have to Plaintiff's allegations in this case and they are insufficient to create an issue of fact.

In conclusion, the Court finds that Plaintiff has failed to meet her burden establishing that Defendants' reasons for her demotion and termination were a pretext for discrimination. Plaintiff's "termination occurred . . . only after a decision, based on substantial evidence, of an

undisputedly independent, neutral, and unbiased adjudicator that had the power to prevent the termination." *Collins*, 305 F.3d at 119. The arbitrator's findings, which were made after three days of testimony, are highly probative of the absence of discriminatory intent. Plaintiff's conclusory allegations to the contrary, which are based almost entirely on her own beliefs, are insufficient to create a question of fact as to whether Defendants' legitimate, non-discriminatory reasons were, in fact, a pretext for discrimination. *See Simpson v. N.Y.S. Dep't of Civil Service*, No. 02-cv-1216, 2005 WL 545349, *19 (N.D.N.Y. Mar. 1, 2005) (citations omitted). Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's gender discrimination claims.

## C. Federal and State Gender Retaliation

Title VII prohibits employers from discriminating against an employee who "has opposed any practice made an unlawful employment practice" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing[.]" 42 U.S.C. § 2000e-3(a). Courts analyze Title VII retaliation claims according to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) (citation omitted).

To make out a *prima facie* case of retaliation under Title VII, a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find:

> "(1) that he engaged in protected participation or opposition under Title VII . . . , (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action."

*Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (other citations omitted). "Upon such a showing, the defendant must articulate legitimate

non-discriminatory reasons for its actions, whereupon the plaintiff bears the burden of showing that the defendant's explanations are pretext for the true discriminatory motive." *Holt v. KMI-Cont'l,* 95 F.3d 123, 130 (2d Cir. 1996). Retaliation claims under the ADA and NYSHRL are analyzed under the same framework as that employed in Title VII cases. *Krasner v. City of N.Y.*, 580 Fed. Appx. 1, 3-4 (2d Cir. 2014) (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)); *see also Lovejoy-Wilson v. NOCO Motor Fuel*, Inc., 263 F.3d 208, 223 (2d Cir. 2001).

The first prong of this analysis is satisfied by Plaintiff's filing of charges with the EEOC. Dkt. No. 62-1 at 182, 184. At the summary judgment stage, Plaintiff's allegation that she told Defendants that she would be filing an EEOC charge is sufficient to satisfy the second prong. Dkt. No. 27 at ¶ 26. Defendants' demotion and firing of Plaintiff qualify as "adverse employment actions." Dkt. No. 76 at ¶¶ 46, 65; *see also Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) ("Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand").

Ultimately, because "Title VII retaliation claims must be proved according to traditional principles of but-for causation," the plaintiff must show "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013); *see, e.g., Kirkland v. Cablevision Systems*, 760 F.3d 223, 225 (2d Cir. 2014); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013). "'[B]ut-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Kwan*, 737 F.3d at 846. To meet this burden, the plaintiff may rely on evidence presented to establish her prima facie case as well as additional evidence. Such

additional evidence may include direct or circumstantial evidence of discrimination. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is insufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas'* s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, *i.e.*, whether the record contains sufficient evidence "that retaliation was a but-for cause of the adverse employment action." *Weber v. City of New York*, 973 F. Supp. 2d 227, 271 (E.D.N.Y. 2013) (citation omitted).

In the present matter, the Court finds that Plaintiff has failed to put forth evidence demonstrating that her demotion or termination were causally related to any protected activity. As Defendants correctly contend, Plaintiff's co-workers identified numerous errors that she was making and brought them to Mr. Maschino's attention. *See* Dkt. No. 62-3 at Exh. E. Mr. Sefcheck, the Union steward, advocated for Plaintiff to be given additional time to learn the job and, as a result, was provided with more training opportunities in the mark-to-cut area than any of the other trainees. *See id.* at ¶¶ 22-23; Dkt. No. 62-1 at ¶¶ 46-47. Moreover, Plaintiff admits that Mr. Maschino, Mr. Sefcheck, Nick Farley, and other inspectors discussed the errors that she was making while serving as an Inspector Trainee. *See* Dkt. No. 63-7 at 7-10. Further, Plaintiff does not dispute that she was not the only Special Metals employee who was demoted out of the Inspection Department for performance-related issues. In February of 2010, Mark Calenzo and Peter Decarlis were demoted for performance-related issues. *See* Dkt. No. 62-1 at ¶ 17.

Moreover, this result is further supported by the fact that a considerable amount of time separates the filing of the EEOC complaint and the alleged retaliatory conduct. Plaintiff filed

EEOC charges on March 11, 2010 and April 14, 2010, which is the closest-in-time protected conduct to her demotion. *See* Dkt. No. 27 at ¶ 24. Plaintiff, however, was not demoted until February 25, 2011. *See id.* at ¶ 26. Considering the significant and repeated mistakes Plaintiff made while serving as an Inspector Trainee, the nearly ten months that elapsed from the protected activity to the demotion is insufficient to support the inference that the alleged retaliation would not have occurred in the absence of the alleged improper motive. *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 251 (E.D.N.Y. 2015) (citing *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013)) (other citation omitted); *Imperato v. Otsego Cnty. Sheriff's Dep't*, No. 3:13-cv-1594 (BKS/DEP), 2016 U.S. Dist. LEXIS 50155, *61 (N.D.N.Y. Apr. 14, 2016) (quoting *Perry v. NSARC, Inc.*, 424 Fed. Appx. 23, 26 (2d Cir. 2011); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).

As to her termination, Plaintiff does not dispute that, in the five-year period preceding her termination, four male employees were terminated for violating Plant Rule #19. *See* Dkt. No. 62-3 at 2-5. The consistent application of the rule to male employees further demonstrates the lack of retaliatory motive in Defendants' actions.

Additionally, Plaintiff asserts that there is direct evidence of retaliatory animus related to her termination in the form of comments that were made about her. *See* Dkt. No. 77 at 18. Plaintiff claims that she was told by co-workers that "they are out to get you" and "they are gunning for you." *Id.* Plaintiff also asserts that Defendant Farley informed Mike Geddes that Plaintiff was "not coming back, she doesn't have a case," which she claims is direct evidence of retaliatory animus. *Id.* (citing Geddes Affm ¶ 10). Although Mike Geddes does claim that Defendant Farley did make this statement, he claims that it was made "either in 2008 or 2009." Dkt. No. 75 at ¶ 10. As such, contrary to Plaintiff's assertions, this statement, which occurred in

either 2008 or 2009, in a context entirely unrelated to the present matter, is not "direct evidence of retaliatory animus." *Imperato*, 2016 U.S. Dist. LEXIS 50155, at *61.

Considering the arbitrator's decision upholding Plaintiff's termination, and in light of the foregoing, the Court finds that Plaintiff has failed to put forth evidence upon which a reasonable juror could conclude that Defendants' non-retaliatory reasons for Plaintiff's demotion and termination were a pretext for retaliation. Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's retaliation claims.

**D.     Federal and State Disability Discrimination and Retaliation**

The ADA prohibits "discrimination against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (citing *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)).

The ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). A retaliation case under the ADA requires "a showing that the employee was engaged in an activity protected by the ADA." *Gold v. Carus*, 131 Fed. Appx. 748, 750 (2d Cir. 2005) (quotations and citation

omitted). ADA retaliation claims are analyzed under the same framework as Title VII retaliation claims. *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) ("[The Second Circuit] conclude[s] that it is appropriate to apply the framework used in analyzing retaliation claims under Title VII in analyzing a claim of retaliation under the ADA").

"[The ADA's] anti-retaliation provision must be construed to cover a broad range of employer conduct." *Thompson v. North American Stainless, LP*, 562 U.S. 170, 173 (2011) (citation omitted). Keeping that premise in mind, the Second Circuit has held that "retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the second element of the retaliation prima facie case." *Martin v. New York State Dep't of Corr. Servs.*, 224 F. Supp. 2d 434, 448 (N.D.N.Y. 2002) (citing *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)). In determining whether the co-worker harassment is "sufficiently severe," the court should consider whether the plaintiff has "endure[d] a materially adverse change in the terms and conditions of employment." *Martin*, 224 F. Supp. 2d at 448 (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)) (citation omitted). Further, "material adversity is to be determined objectively, based on the reactions of the reasonable employee." *Rivera v. Rochester Genesee Regional Transp. Authority*, 743 F.3d 11, 25 (2d Cir. 2012).

Defendants argue that Plaintiff cannot establish a prima facie case of discrimination because (1) she has not shown that the arbitrator's decision regarding her termination was wrong as a matter of fact, or that the impartiality of the arbitration proceeding was somehow compromised, and (2) Plaintiff is not disabled within the meaning of the ADA or Rehabilitation Act. Dkt. No. 62-7 at 20-21.

In the present matter, the Court finds that Plaintiff has failed to establish that she was

retaliated against in violation of the ADA or that she suffered an adverse employment action because of her disability. First, the only disability mentioned in Plaintiff's amended complaint is the hand injury that she suffered on or about February 28, 2006. *See* Dkt. No. 27 at ¶ 17. In her response, Plaintiff now argues that, in addition to her hand, she has "COPD, asthma, emphysema, chronic bronchitis, etc." and that her "'permanent medical restriction' with Special Metals involves her respiratory condition." Dkt. No. 76 at ¶ 84. Second, Plaintiff does not make any mention of what makes her a qualified individual with a disability in her EEOC complaint. *See* Dkt. No. 72-1 at 15, 17. In the letter of determination, however, the EEOC makes clear that the alleged disability is that Plaintiff has a "history of asthma and COPD." *Id.* at 21. In this letter, no mention is made of Plaintiff's hand injury. *See id.* at 20-22.[3] As such, the only allegation in the amended complaint relating to disability discrimination/retaliation (Plaintiff's 2006 hand injury) was not raised before the EEOC and, therefore, not administratively exhausted. As such, for this reason alone, Plaintiff's ADA discrimination and retaliation claims are subject to dismissal.

Second, even assuming these claims are properly before the Court, the only plausible allegation of disability discrimination is that Plaintiff was discriminated against because of her disability in February of 2010 when she was denied the Inspection Trainee position. *See* Dkt. No. 77 at 15. Upon this denial, Plaintiff filed a charge with the EEOC and, in June of 2010, Plaintiff entered into a Conciliation Agreement and was awarded, among other things, the Inspection Trainee position she had sought. *See* Dkt. No. 82-1 at ¶ 9. Under the terms of the Conciliation Agreement, Plaintiff "agree[d] not to sue [Special Metals] with respect to any allegations contained in the . . . charge." Dkt. No. 63-1 at 5. As such, to the extent that Plaintiff is

---

[3] Although Plaintiff filed a complaint with the EEOC in August of 2008 relating to her hand injury, that complaint is not properly before the Court. *See* Dkt. No. 72-1 at 2-3.

attempting to allege that her initial denial of the Inspector Trainee position was discrimination in violation of the ADA, that claim was already disposed of through the Conciliation Agreement and Plaintiff waived her right to sue as part of that settlement. *See EEOC v. Bay Ridge Toyota, Inc.*, 327 F. Supp. 2d 167, 171 (E.D.N.Y. 2004) ("When the parties enter into a conciliation agreement . . . the employees waive their rights to sue with respect to the matters alleged in the EEOC charge").

Moreover, as stated earlier, if an independent arbitrator's decision "follows an evidentiary hearing and is based on substantial evidence", a plaintiff asserting a discrimination claim "must present strong evidence that the decision was wrong as a matter of fact" or that the "impartiality of the proceeding was somehow compromised" in order to survive a motion for summary judgment. *Collins*, 305 F.3d at 119. "Absent new evidence or a reason to question the integrity of those proceedings, the arbitral decision 'has probative weight regarding the requisite causal link between an employee's termination and the employer's illegal motive.'" *Young v. Benjamin Dev. Co.*, 2009 U.S. Dist. LEXIS 18280, *24 (S.D.N.Y. Feb. 17, 2009) (quoting *Collins*, 305 F.3d at 120). Here, Plaintiff has failed to allege that the decision was wrong as a matter of fact or that the impartiality of the proceeding was somehow compromised. Since Plaintiff has not offered any evidence or reason to question the integrity of the arbitration proceedings, she has failed to establish a causal link between her termination and her alleged disability. Finally, even assuming these other ailments were properly alleged in the amended complaint as part of Plaintiff's ADA claims, Plaintiff has failed to set forth any evidence, other than her own conclusory allegations, that she was discriminated against or retaliated against in violation of the ADA.

Based on the foregoing, the Court grants Defendants' motion for summary judgment with respect to her disability discrimination and retaliation claims.

**E. Hostile Work Environment**

In their motion, Defendants contend that, to the extent that Plaintiff could be attempting to allege a hostile work environment claim, it must be dismissed. *See* Dkt. No. 62-7 at 33-34. Specifically, Defendants contend that Plaintiff failed to raise this claim with the EEOC and, therefore, it is not exhausted and it is not reasonably related to either of the EEOC charges. *See id.* at 32-33. Alternatively, Defendants argue that the amended complaint simply alleges that Plaintiff was "'repeatedly and daily subject to silent treatment, taunting, and humiliation,'" which they claim fails to plausibly allege a hostile work environment claim. *Id.* (quoting Dkt. No. 27 at ¶ 34). In her response, Plaintiff provides some additional details regarding this alleged claim. *See* Dkt. No. 77 at 25-26.

First, the Court finds that neither of the relevant EEOC charges are reasonably related to the alleged hostile work environment claim and, therefore, the claim has not been exhausted. In EEOC Charge No. 525-2011-00320, Plaintiff complained only of retaliation in violation of the ADA. *See* Dkt. No. 62-1 at 182. In the EEOC charge relating to her termination, Plaintiff alleges only that, "[u]pon information and belief, male employees and/or employees without a disability and or employees who have not complained of discrimination have not been terminated for misconduct based on [Plant Rule #19]." *Id.* at 184-85. The allegations in the EEOC charges, which make only vague and general allegations regarding the alleged disparate treatment of men and women, are insufficient to exhaust a hostile work environment claim. *See Morris v. David Lerner Assoc.*, 680 F. Supp. 2d 430, 437 (E.D.N.Y. 2010) (citing cases); *Fleming v. Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 464 (S.D.N.Y. 2005) (finding hostile work environment claim not reasonably related to EEOC charge because EEOC charge only made general allegations regarding employer's disparate treatment of men and women). Accordingly, the Court finds that

Plaintiff failed to exhaust any alleged hostile work environment claim. *See Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 328-29 (N.D.N.Y. 2013) (holding that the alleged hostile work environment claim was not reasonably related to the EEOC complaint) (citing cases).

Even assuming Plaintiff did exhaust this claim, the Court finds that she failed to plausibly allege a hostile work environment claim. Plaintiff's amended complaint contains eleven causes of action: seven gender and disability discrimination claims and four gender and disability retaliation claims. Not once does Plaintiff allege that she was subject to a hostile work environment. Further, the only allegations in the amended complaint that could be considered to support such a claim, fail to plausibly allege such a cause of action. *See La Marco v. N.Y.S. Nurses Ass'n*, 118 F. Supp. 2d 310, 316-17 (N.D.N.Y. 2000) (citing *Williams v. County of Westchester*, 171 F.3d 98, 100 (2d Cir. 1999)).

Moreover, even assuming that Plaintiff's amended complaint plausibly alleges such a claim (which it does not), notably absent from Plaintiff's response is any allegation that she reported this allegedly pervasive hostile conduct to a supervisor or human resources, despite a policy in place regarding such conduct. Special Metals has established that, through its anti-harassment and discrimination policies and training, it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *see also* Dkt. No. 62-1 at ¶ 45. In fact, Plaintiff has admitted that, when brought to its attention, inappropriate material was removed from the workplace. Specifically, Plaintiff complains that management did not adequately respond when she informed them that someone had written something inappropriate about her on the men's bathroom wall. *See* Dkt. No. 62-5 at 75-79. Thereafter, however, Plaintiff admits that the writing was removed from the bathroom wall on the same day she brought it to her supervisor's attention. *See id.* at 78. The undisputed

facts clearly establish that, despite the reasonable care taken to avoid and prevent hostile work conditions, Plaintiff "unreasonably failed to take advantage of [these] preventive or corrective opportunities . . . or to avoid harm otherwise." *Burlington Indus., Inc.*, 524 U.S. at 765; *see also Petrosino v. Bell Atlantic*, 385 F.3d 210, 225 (2d Cir. 2004).

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's hostile work environment claim.

## F. Rehabilitation Act

Defendants contend that, in addition to all of the reasons discussed above, Plaintiff's claim under the Rehabilitation Act is subject to dismissal because Special Metals was not a recipient of federal funds during Plaintiff's employment, as required under the Act. *See* Dkt. No. 62-7 at 36-37. Plaintiff failed to respond to this argument and, therefore, the Court finds that she has abandoned this claim. *See Blake v. Race*, 487 F. Supp. 2d 187, 217 (E.D.N.Y. 2007) (citing cases). In the alternative, since Plaintiff failed to present any evidence demonstrating that Special Metals received federal assistance and is therefore subject to the Rehabilitation Act, the Court grants Defendants' motion for summary judgment. *See Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 263 (E.D.N.Y. 2009) (citation omitted).

## G. Tenth and Eleventh Causes of Action

In her Tenth and Eleventh Causes of action, Plaintiff asserts claims under Article I, Section 11 of the New York State Constitution. As Defendants correctly contend, these claims must be dismissed. Where, as here, adequate remedies exist under federal and state laws to protect the asserted rights, there is "no private right of action under the New York State Constitution." *G.D.S. ex rel. Slade v. Northport–E. Northport Union Free Sch. Dist.*, 915 F. Supp. 2d 268, 280 (E.D.N.Y. 2012) (citations omitted); *Kalsi v. N.Y.C. Transit Auth.*, 62 F. Supp.

2d 745, 761 (E.D.N.Y. 1998).

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to these claims.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 62) is **GRANTED** in its entirety; and the Court further

**ORDERS** that Plaintiff's claims are **DISMISSED** with prejudice; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case.

**IT IS SO ORDERED.**

Dated: September 6, 2016
        Albany, New York

Mae A. D'Agostino
U.S. District Judge